**MICHAEL J. REDENBURG, ESQ. PC**
Michael J. Redenburg
150 Broadway, Suite 808
New York, NY 10038
Phone: (212) 240-9465

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

YUSUF SMITH,

                              **Plaintiff,**

v.

**THE CITY OF NEW YORK, AND Police Officer Antonio Meyers, Tax #922785, Shield #26305,**

                              **Defendants.**

**Amended Complaint**

**JURY TRIAL DEMANDED**

**Civ. No.: 12 CV 6392 (RJD)(LB)**

## NATURE OF THE ACTION

1. This is a civil rights action alleging that the City of New York and New York City Police Officer Antonio Meyers, violated Plaintiff's rights under 42 U.S.C. §1983 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Specifically, Plaintiff alleges that, on December 19, 2012, defendants falsely arrested him and made false allegations about him to the Kings County District Attorney's Office. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

1

2. This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, Article 1 of the New York Constitution, and New York common law.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §1331 and §1343.

4. Venue is proper in the district pursuant to 28 U.S.C. §§1391 (b) and (c).


## JURY DEMAND

5. Plaintiff demands a trial by jury in this action.

## PARTIES

6. Plaintiff Yusuf Smith ("Plaintiff" or "Mr. Smith") is a twenty two year old African American man born in Kings County, New York; he resides in Kings County, New York and is a United States citizen. Plaintiff does not have a criminal record.

7. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD a department or agency of the defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendant herein.

8. Defendant police officer Antonio Meyers is a member of the New York City Police Department ("NYPD") who was acting under color of state law and in his capacity as a New York City law enforcement officer at all relevant times. Defendants are liable for directly participating in the unlawful acts described herein and for failing to intervene to protect Plaintiff from unconstitutional conduct. Defendant police officer Antonio Meyers is sued in both his individual and official capacities.

2

### STATEMENT OF FACTS

9.  On December 19, 2012, at approximately twelve noon, Plaintiff was lawfully present within the lobby of the Bushwick-Hylan Houses, at or near 131 Moore Street, Brooklyn, NY; which are NYCHA residences.

10. At no time was Plaintiff involved in criminal activity or acting in a manner to give officers any reasonable suspicion or probable cause to believe that a crime had been committed or was being committed.

11. Plaintiff was entering the building to see his friend and his friend's grandmother who live in the building in Apartment 6J.

12. As Plaintiff entered the lobby, a uniformed officer, NYPD officer Antonio Meyers, ran toward Plaintiff, startling Plaintiff; and grabbed Plaintiff by his arm.

13. NYPD officer Antonio Meyers did not have even arguable probable cause or reasonable suspicion to stop Plaintiff.

14. Defendant NYPD officer Antonio Meyers demanded to know where Plaintiff was going and then asked Plaintiff, in sum and substance, "What are you doing here?"

15. In response, Plaintiff responded that he was there to see his friend and his friend's grandmother who lived in Apartment #6J, and although under absolutely no obligation to do so, even offered to take the officer to the apartment to verify same.

16. Plaintiff's offer was refused, and Defendant NYPD officer Antonio Meyers instructed Plaintiff to put his hands behind his back as he was under arrest.

17. Plaintiff complied.

18. Defendant NYPD officer Antonio Meyers did not have even arguable probable cause to arrest Plaintiff.

19. Defendant NYPD officer Antonio Meyers then proceeded to pat down and frisk Plaintiff.

20. The aforementioned pat down and frisk did not produce any contraband.

21. At no time did defendant NYPD officer Antonio Meyers observe Plaintiff trespass.

22. Thereafter, and in furtherance of his illegal arrest, Plaintiff was taken to the precinct for processing.

23. Defendant NYPD officer Antonio Meyers then proceeded to illegally search Plaintiff and recovered one small bag of marijuana from inside Plaintiff's shoe, that Plaintiff had for personal use.

24. To cover up their illegal stop, search and seizure of Plaintiff, defendant NYPD officer Antonio Meyers arrested Plaintiff for Unlawful Possession of Marijuana (a violation), Criminal Possession of Marijuana in the 5th Degree and Trespassing in the Second, Third and Fourth Degrees.

25. Because possession of marijuana for personal use is not a crime in New York, but rather a violation, defendant NYPD officer Antonio Meyers lied and alleged that his illegal search of Plaintiff produced marijuana of an aggregate weight of more than twenty-five grams.

26. At no time did Plaintiff have marijuana or any other contraband in public view.

27. At no time did Plaintiff possess marijuana in the aggregate weight of more than twenty-five grams.

28. At the precinct, defendant NYPD officer Antonio Meyers falsely informed employees of the Kings County District Attorney's Office that he had observed Plaintiff trespass, and that he had found marijuana in the aggregate weight of more than twenty-five grams on Plaintiff's person.

4

29. Defendant NYPD officer Antonio Meyers then signed a Criminal Court Complaint which commenced a criminal proceeding against the Plaintiff herein.

30. At arraignment, the criminal charges against Plaintiff were adjourned in contemplation of dismissal.

31. Plaintiff was deprived of his liberty, suffered an unlawful detention, experienced emotional distress, mental anguish, fear, anxiety, embarrassment, humiliation and damage to his reputation.

## FIRST CLAIM
### *§1983 FALSE ARREST*

32. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

33. Defendant NYPD officer Antonio Meyers violated the Fourth and Fourteenth Amendments because he arrested Plaintiff without probable cause.

34. Plaintiff was aware of his confinement and he did not consent to it.

35. The confinement was not otherwise privileged.

36. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM
### *UNLAWFUL STOP AND SEARCH*

37. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

38. Defendant NYPD officer Antonio Meyers violated the Fourth and Fourteenth Amendments because he stopped and searched Plaintiff without reasonable suspicion.

39. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
### *§1983 FABRICATION OF EVIDENCE*

40. Plaintiff repeats and realleges each and every allegation as if more fully set forth herein.

41. Defendant NYPD officer Antonio Meyers created false evidence against Plaintiff and forwarded such false evidence to the Kings County District Attorney's Office.

42. In creating such false evidence, the defendant NYPD officer Antonio Meyers violated Plaintiff's constitutional right to a fair trial.

43. The aforesaid conduct by defendants violated Plaintiff's rights under 42 U.S.C. §1983 and the Fifth and Fourteenth Amendments to the United States Constitution.

44. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages alleged.

## FOUTH CLAIM
### *§1983 "MONELL" CLAIM*

45. Plaintiff repeats realleges each and every allegation as if more fully set forth herein.

46. Within the past year alone, Plaintiff Yusuf Smith has endured humiliation and fear due to the CITY OF NEW YORK'S vertical patrol's within the NYCHA residence he resides in.

47. Within the past year alone, Plaintiff Yusuf Smith, has been stopped by NYPD officers **more than 10 (TEN) times within his own HYCHA residence**, and questioned as to where he was going, or coming from.

48. The City, through policies, practices and customs, directly caused the constitutional violations suffered by Plaintiff.

6

49. The City, through its police department, has had and still has hiring, training, promotion and retention practices that it knows will lead to the hiring, training and promotion of police officers unable to discharge their duties in accordance with the constitution.

50. The City, through its police department, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence and perjury.

51. The City, at all relevant times, was aware that this individual defendant routinely commits constitutional violations such as those at issue here and has failed to change its policies, practices and customs to stop this behavior.

52. The City, at all relevant times, was aware that this individual defendant is an unfit officer who has previously committed the acts alleged herein and/or has the propensity for unconstitutional conduct.

53. These policies, practices and customs were the moving force behind Plaintiff's injuries.

54. Moreover, the City of New York has implemented and continues to conduct, enforce and sanction an unlawful vertical patrol and trespass arrest policy which has resulted in a pattern and practice of illegal stops, seizures, questioning, searches and false arrests of authorized visitors to NYCHA residences.

55. The NYPD first implemented vertical patrols in 1991. The protocol was adopted to address crime, and specifically, drug activity, in NYCHA residences. It is considered an "important component of the [NYPD]'s drug control strategy." (NYPD Patrol Guide Procedure, 212-59).

56. In the course of a vertical patrol, multiple NYPD officers approach anyone they observe in the common areas of a building to affirmatively establish a connection to a specific building resident. If an individual stopped and seized pursuant to a vertical patrol fails to

identify himself to the satisfaction of the officer, or is unable to demonstrate to the satisfaction of the officer, that he or she is going to, or coming from, a visit to a specific resident or his or her own home, he or she is arrested for trespass. If the individual has not already been searched for contraband pursuant to the seizure, they are subjected to a search for contraband pursuant to their arrest.

57. The NYPD's policy amounts to a roving pedestrian checkpoint wherein NYPD officers indiscriminately stop, seize, question, frisk and even search individuals in the common areas of NYCHA residences in the absences of individualized objective facts.

58. In 2005, the NYPD Housing Bureau alone conducted approximately 181,000 vertical patrols in NYCHA residences, and an average of 142,000 annually over the previous six years. *Testimony of Chief Joanne Jaffe, NYPD Housing Bureau,* New York City Council Committee on Public Safety and Subcommittee on Public Housing (November 2, 2006) at 24. These figures underestimate the actual numbers of vertical patrols, however, since NYPD officers outside of the Housing Bureau also patrol NYCHA residences, also conduct vertical patrols in NYCHA residences, and also arrest people for trespass in NYCHA residences.

59. In addition to directed or organized vertical sweeps in NYCHA residences, NYPD officers also sweep NYCHA residences for alleged trespassers on an informal basis.

60. Trespassing in public housing is a Class B Misdemeanor under subsection (e) of New York Penal Law §140.10, which was enacted in 1992 shortly after the inception of the vertical patrol program.

61. The number of trespass arrests in NYCHA residences has surged. The City has not provided a legitimate and neutral explanation for this rise in the arrest rate.

62. The NYPD Patrol Guide on vertical patrols provides NYPD officers no guidance on who is to be stopped, seized, questioned, frisked, searched or arrested for trespass. It simply directs uniformed patrol officers to "take note of unauthorized persons remaining in lobbies, basements, staircases and roof landings and take appropriate police action when necessary." (NYPD Patrol Guide 212-60). Yet the vertical patrol provisions contain no criteria for determining who is – and who is not – an "unauthorized person."

63. The vertical patrol policy and trespass arrest practices implemented by NYPD officers fails to require that an arresting officer act upon observed behavior that reliably differentiates a suspected trespasser or "unauthorized person" in a NYCHA hallway from a lawful visitor in transit or a building resident enjoying the common areas of his or her home. Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with the building residents and visitors cannot consistently or reliably differentiate between a suspected trespasser and a building resident enjoying the common areas of his or her home. Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with building residents and visitors cannot consistently or reliably differentiate between a suspected trespasser and a building resident, visitor, permittee or licensee based on this policy.

64. Defendant's failure to provide adequate guidance, training and support to NYPD officers regarding how to conduct vertical patrols, including whom to stop, question, seize, frisk, search and arrest for trespass results in a *de facto* roving checkpoint and a pattern and practice of unlawful stops and seizures.

65. The only guiding principle provided to NYPD officers are consistent with, and reflective of, a policy, practice and custom of reckless arrests based on less than probable cause.

9

66. Under this policy, as written, people are, or can be, arrested for trying to visit someone who is not at home based solely on their mere presence in or around a NYCHA residence. People are also arrested in instances in which they know only their friend's first name or "street" name, or only know the apartment by the location rather than the number. Individuals who remain silent upon questioning for trespass by NYPD officers are subject to arrest. This is true even if the only basis for the NYPD's questioning is the presence of that individual in a NYCHA common area.

67. Defendant's vertical patrol policy and trespass arrest practices, even if diligently followed, cause a pattern and practice of false arrests of many people who are lawfully on the premises. Without probable cause to suspect criminal activity, the individual is forced to defeat a presumption of guilt with the presentation of documents or witnesses at the time of arrest.

68. In addition to screening for suspected trespassers, another purported purpose of the vertical patrol program and trespass arrest practices is to screen and police NYCHA residents themselves. According to Inspector Michael C. Phipps, Commanding Officer, Housing Bureau Manhattan, the NYPD has the authority to arrest building residents and charge them with second degree trespass for entering certain areas of their own building, "namely, the roof landings, the rooftops, the store rooms, maintenance areas and basements." Testimony of Insp. Michael C. Phipps, New York City Council Committee on Public Housing (April 29, 2004) at 24 (Phipps Testimony). Inspector Phipps testified that "[w]hen tenants sign lease agreements with the Housing Authority, they are advised not to enter" these areas in their building. *Id.*

69. In fact, NYCHA leases do not contain any such clause. A NYCHA lease merely provides that, when given proper notice, tenants must comply with all lawful rules and regulations promulgated by the Landlord. For example, signs posted in or around lobbies of NYCHA residences, if any, may state "No Trespassing" or "Loitering and trespassing in lobby, roof, hallway and stairs is not permitted. Violators are subject to arrest and prosecution by the Police Department."

70. Trespassing is an offense which requires that a person unlawfully enter or remain in a prohibited area. There is no law prohibiting a resident's mere presence in or around the stairwells, hallways, roofs, or roof landings in his or her own apartment building. Indeed, there could be no lawful regulation or notice provision prohibiting entirely a resident's mere presence in his or her own hallway or stairwell.

71. Loitering also requires a specific unlawful purpose for being present at a location such as "begging," NY Penal Law §240.35(1); gambling, NY Penal Law §240.35; sexual conduct, NY Penal Law §240.35(3); possessing a controlled substance, NY Penal Law §240.36; or engaging in prostitution, NY Penal Law §240.37.

72. Thus, there is no legal basis for wholesale stopping, seizing, questioning, frisking, searching and arresting individuals for mere presence in lobbies, roofs, hallways and stairwells in and around NYCHA residences. Yet defendant has enforced, promoted, encouraged and sanctioned these customs and practices.

73. The City has failed to supervise and discipline NYPD officers who unlawfully stop, question, frisk, seize, search and arrest individuals for trespass. On information and belief, defendant does not monitor improper stops, seizures and searches for trespass. Nor has the defendant instituted any follow-up procedure or disciplinary action when charges

are dismissed or where it is otherwise established that an individual was arrested without probable cause.

74. As a direct and proximate result of this unlawful conduct and the above customs and practices, Plaintiff sustained the damages alleged herein.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

    a.   Compensatory damages against all defendants, jointly and severally;

    b.   Punitive damages in an amount to be determined by a jury;

    c.   Reasonable attorneys' fees and costs;

    d.   Such other relief as this Court shall deem just and proper.

Dated:    April 17, 2013
           New York, NY

                        **s/ Michael J. Redenburg**
                        Michael J. Redenburg (NY #MR4662)
                        MICHAEL J. REDENBURG, ESQ. PC
                        150 Broadway, Suite 808
                        New York, NY 10038
                        mredenburg@mjrlaw-ny.com
                        1-212-240-9465 (Phone)
                        1-917-591-1667 (Fax)